UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELISSA LEUZZI,

    Plaintiff,

v.                                Case No.:  2:25-cv-396-SPC-DNF

FAWCETT MEMORIAL
HOSPITAL, INC. d/b/a HCA
FLORIDA FAWCETT HOSPITAL,

    Defendant.

## OPINION AND ORDER

Before the Court is Defendant Fawcett Memorial Hospital's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 17). Plaintiff Melissa Leuzzi responded in opposition (Doc. 26), and Defendant replied (Doc. 32). For the below reasons, the Court grants the motion.

### Background[1]

On April 24, 2023, Plaintiff accepted an offer through a healthcare staffing agency, Aya Healthcare Companies, to work as a registered nurse at Defendant from May 31, 2023, through August 26, 2023. (Doc. 14 ¶ 7; *id.* at 35–38 ("Exhibit A")). The offer included pre-approved days off so Plaintiff could

---

[1] The Court accepts the well-pleaded facts in the First Amended Complaint ("FAC") (Doc. 14) as true and construes them in the light most favorable to Plaintiff. *United States v. Jallali*, 478 F. App'x 578, 579 (11th Cir. 2012).

attend classes, take exams, and go to a medical appointment. Additionally, Defendant had a Non-Retaliation Policy ("NRP"). (*Id.* ¶ 13; *id.* at 39–41). The NRP provided that "Protected Activity means communicating appropriately, in good faith, about ethics or compliance concerns, reporting concerns or inappropriate behavior, participating in an investigation, refusing to participate in appropriate or wrongful activity and exercising rights protected by law." (*Id.* at 41).

Shortly after accepting the offer to work at Defendant, Plaintiff accepted an offer to begin working at a Veterans Affairs ("VA") hospital in New Mexico in August 2023. She told Defendant that she was selling her residence in Miami and relocating to New Mexico but confirmed she would fulfill her contract.

Plaintiff attended orientation on May 31. Judy Elliott, nurse manager and Plaintiff's supervisor, provided her with a work schedule. Plaintiff notified Elliott that the assigned days conflicted with her educational commitments and asked for a schedule change. Elliott refused. June 1 was a scheduled training day for Plaintiff. She advised Defendant's director, Brandy Crabill, of the scheduling conflict and asked for a schedule change to "accommodate her protected disabilities," her academic schedule, and commitments related to her relocation. (*Id.* ¶ 25). Defendant refused. So on June 1, Plaintiff submitted her two-weeks' notice. (*Id.* ¶ 27; *id.* at 42 ("Exhibit C")).

2

On June 4, Plaintiff began work and identified several problems at the hospital. For instance, multiple patients had overdue IV infusion medication orders. Plaintiff told the charge nurse and expressed concerns about her patient assignments. Defendant incorrectly programmed Plaintiff's phone, so she could not call many doctors to assist a medically unstable patient. Plaintiff describes additional issues with Defendant's staff.

She submitted three incident reports through the risk management portal, and the next day, she told the nurse manager that Defendant's practices violated the Nurse Practice Act and Nursing Code of Ethics. On June 5, she asked to be removed from future work schedules. (Doc. 14 at 50 ("Exhibit E")). She texted the nurse manager and the director that her resignation was effective immediately. In total, Plaintiff worked at Defendant Hospital for Aya for one week.

On June 7, Aya advised Plaintiff that one of her patients said she did not feel euphoria from her pain medication, and Defendant was investigating potential diversion of pain medication. Defendant requested an in-person meeting with Plaintiff about the issue on June 8. But that was one of Plaintiff's pre-approved days off, and she was in Miami. At first, Defendant agreed to a phone meeting but then insisted Plaintiff attend in person. Plaintiff requested, but was refused, a Zoom meeting or a different date.

3

On June 9, Defendant conducted a meeting and created an investigation report. (Doc. 14 at 43–49 ("Exhibit D")). Under Pharmacy Findings, the report explains that no discrepancies were found with medication documentation. Plaintiff alleges that Defendant made "materially false and misleading statements" in the report, which it submitted to the Florida Department of Health ("DOH") in a Health Care Provider Complaint Form on June 14, 2023. Among other things, Plaintiff alleges:

> the claim that the "Patient reported nurse was stealing her medications" is contradicted by the words that Fawcett alleged the patient to have stated, as reflected on the Complaint form of the preceding page, and is materially false;
>
> the statement that Plaintiff "was scheduled to come in June 8, 2023 and did not show" is false as Plaintiff had resigned on June 5, 2023; she never agreed to meet in person on June 8, 2023; that day, June 8, 2023, was a preapproved day off; and Fawcett knew all that before it wrote the Report;
>
> "Melissa quit to nursing supervisor on June 6th when questioned" is a material falsehood, as Fawcett did not communicate with Plaintiff on June 6, 2023, and Plaintiff had already resigned for cause the previous day.

(Doc. 14 ¶ 54). Plaintiff alleges that because of the report, an investigation was conducted that if resolved against her, would have subjected her to potential or actual loss of her license as a registered nurse. She alleges that "Fawcett

4

basically alleged [she] committed federal crimes" and filed the report in retaliation for her submission of the incident reports. (*Id.* ¶ 56).

As a result, Plaintiff alleges that she suffered severe emotional distress that disrupted her employment with Defendant and afterward, leading to periods of unemployment, unstable housing, debts, and other damages. She had to hire a lawyer to defend herself against the allegations in the report. The complaint was ultimately dismissed, and Plaintiff obtained her license as a psychiatric mental health nurse practitioner. However, her plans to move to New Mexico were delayed because she had to defend herself. Her severe emotional distress resulted in physical manifestations and caused Plaintiff to end her employment with the VA earlier than she would have but for the emotional distress Defendant caused. Defendant allegedly caused her to suffer lost wages from June 2023 to August 2023 and October 2023 to March 2024. Her damages exceed $100,000.

Based on these facts, Plaintiff brings claims against Defendant for breach of contract (count I), intentional infliction of emotional distress ("IIED") (count II), negligent infliction of emotional distress ("NIED") (count III), violation of Florida's Whistleblower Act ("FWA"), Fla. Stat. §§ 448.101 *et seq*. (count IV), and defamation (count V). (Doc. 14).

## Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## Analysis

Defendant moves to dismiss all claims. (Doc. 17). First, the Court addresses whether Defendant is immune from suit arising from its disclosures to the DOH. (*Id.* at 6). Based on the allegations in the FAC, the Court concludes it is.

In regulating health professions, Florida law provides:

> (11) A privilege against civil liability is hereby granted to any complainant or any witness with regard to information furnished with respect to any investigation or proceeding

6

> pursuant to this section, unless the complainant or witness acted in bad faith or with malice in providing such information.
>
> (12)(a) No person who reports in any capacity, whether or not required by law, information to the department with regard to the incompetence, impairment, or unprofessional conduct of any health care provider licensed under chapter 458, chapter 459, chapter 460, chapter 461, chapter 462, chapter 463, chapter 464, chapter 465, or chapter 466 shall be held liable in any civil action for reporting against such health care provider if such person acts without intentional fraud or malice.

Fla. Stat. § 456.073(11), (12)(a).  In Florida, a court may consider any affirmative defense in resolving a motion to dismiss "when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Meyer v. Fay Serv'g, LLC*, 385 F. Supp. 3d 1235, 1242 (M.D. Fla. 2019) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004)).

To overcome the privilege, a plaintiff must plead and prove "that the defamatory statements were false and uttered with common law express malice—*i.e.*, that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff."[2]  *See Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992); *see also Nodar v. Galbreath,* 462 So. 2d 803, 810 (Fla. 1984) (explaining that malice may not be inferred "from the

---

[2] Plaintiff disputes that she must allege express malice, not statutory malice. (Doc. 26 at 5). For support, she cites Florida Statute § 456.073(11) and (12)(a), which mentions but does not define malice.  She provides no alternative definition from case law or statutes.  So the Court applies the definition Defendant provides, citing Florida law.

mere fact that the statements are untrue" rather "there must be a showing that the speaker used his privileged position to gratify his malevolence") (quotations omitted).  Express malice means "ill will, hostility and an evil intention to defame and injure." *Demby v. English,* 667 So. 2d 350, 353 (Fla. Dist. Ct. App. 1995) (citation omitted).

    Defendant contends that Plaintiff's allegations are insufficient to show malice.  (Doc. 17 at 7).  In response, Plaintiff argues that Rule 9(b) allows her to allege malice "generally," so she has met the threshold to overcome the privilege.  (Doc. 26 at 4).  But she still must satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678.  Plaintiff's conclusory allegations miss the mark.  She alleges that Defendant filed the complaint and report, knowing it contained intentionally false information, in bad faith, and with malicious intent, ill will, hostility, and an evil intention to defame and injure Plaintiff in retaliation for her filing the incident reports.  (Doc. 14 ¶ 57; *see also id.* ¶¶ 86, 99, 113, 126).  Plaintiff uses the buzzwords for malice but does not support them with facts showing that Defendant used a privileged position to gratify its malevolence.  *See Sirpal v. Univ. of Miami*, 684 F. Supp. 2d 1349, 1361 (S.D. Fla. 2010) (finding plaintiff failed to state a defamation claim where he "alleges generally that Dr. Potter maliciously made the statements in the March 12 memo, [but] he states no facts that support this allegation").

She also relies on allegations that statements in the report were materially false and intended to injure her reputation. (*Id.* ¶ 54). But malice cannot be inferred from the fact that the statements are allegedly untrue. *Nodar,* 462 So. 2d at 810. Her allegations fail to overcome the statutory privilege. Thus, to the extent Plaintiff's claims in counts I, II, III, and V are based on Defendant's filing of the complaint and report with DOH, they are dismissed without prejudice.

As for Plaintiff's defamation claim (count V), it is entirely based on the report and complaint to DOH. (Doc. 14 ¶¶ 127–37). So it is dismissed without prejudice for the reasons stated above.[3]

The Court turns to Plaintiff's emotional distress claims. Like her defamation claim, Plaintiff's intentional and negligent infliction of emotional distress claims (counts II and III) are largely based on the report and complaint to DOH. (Doc. 14 ¶¶ 87–98, 100–12). To that extent, they are dismissed without prejudice for the reasons stated above. However, Plaintiff also alleges other bases for these claims, so the Court addresses Defendant's other substantive arguments.

---

[3] Although Plaintiff attempts to switch course and argue that the FAC alleges defamation per se (a distinct claim from defamation) (Doc. 26 at 16), she cannot amend her pleading in her response. *See Eiras v. Florida*, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017). Regardless, the defamation per se allegation is still based on the DOH complaint and barred by the privilege.

9

First, the IIED claim. The elements are: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress. *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002), *aff'd sub nom. Gonzalez-Jiminez de Ruiz v. United States*, 378 F.3d 1229 (11th Cir. 2004). "Only in extremely rare circumstances will courts uphold claims for intentional infliction of emotional distress." *Id.* The alleged action must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and be regarded as "atrocious and utterly intolerable in a civilized community." *Id.* Whether a plaintiff has alleged conduct which meets the essential elements for a claim for IIED is a matter of law to be decided by the Court. *Id.*

Regarding IIED, Plaintiff alleges that Defendant:

> intentionally assigned Plaintiff an unreasonable acuity and dangerous patient assignments that presented a risk to patient safety and care after Plaintiff reported her concerns about patient care at the hospital, which was outrageous because Plaintiff barely had a few days of work experience at the Hospital, her phone was improperly programed such that she could not contact patients' physicians, Fawcett generally was unwilling to help Plaintiff administer care in any meaningful way, and Fawcett knew all of that, but nevertheless intentionally assigned Plaintiff a workload that caused her severe emotional distress and physical exhaustion to a point of

10

>near physical collapse, to handle based on her steadfast desire to deliver top notch patient care.[4]
>
>91. Moreover, it was outrageous for Fawcett to threaten to report, and to actually report, Plaintiff to the Board of Nursing if she did not travel three or more hours on next-to-no notice for an in person meeting about a matter in which Fawcett possessed actual evidence of no wrongdoing by Plaintiff.

(Doc. 14 ¶¶ 90–91). This is not one of the "extremely rare" cases where Defendant's conduct was outrageous enough to sustain a claim for IIED.

The case Plaintiff relies on does not save her claim. For support, Plaintiff cites *McAlpin v. Sokolay*, 596 So. 2d 1266 (Fla. Dist. Ct. App. 1992), where a doctor verbally assaulted a plaintiff in an x-ray room about a debt she owed his friend and his expectation that she would not pay her bill. The plaintiff feared she had cancer and expected medical staff to treat her with concern and care. *Id.* at 1267–68. When the doctor refused to give her an x-ray and threatened to have security remove her from the hospital, the plaintiff tried to explain she had a business dispute with his friend unrelated to medical billing. *Id.* at 1268. But her throat constricted in panic, she became violently nauseous, could not get words out, began sobbing, and ran from the room in a panic—nude except for her hospital gown—through the hospital. *Id.* The court reversed the lower court's ruling that such conduct did not constitute IIED. *Id.* at 1270.

---

[4] If Plaintiff amends her complaint, the Court cautions her against writing run-on sentences like this one.

11

*McAlpin* is distinguishable. Here, Plaintiff alleges she was moving to New Mexico and did not have stable housing, was obtaining a new job and was thus unemployed after her contract with Defendant, and was about to apply to governmental licensing authorities to continue her nursing career. (Doc. 26 at 13 (citing Doc. 14 ¶¶ 12–13, 26, 60–61, 67). And during that period, Defendant submitted the report and complaint. Juxtaposing the two situations, the Court disagrees that Defendant's alleged conduct compares with the *McAlpin* defendant's—particularly given the *McAlpin* plaintiff's fear that her symptoms meant cancer and the vulnerable relationship between a patient and doctor.

And, as Defendant points out, Florida courts have found allegations of false statements insufficient to state a claim. (Doc. 17 at 15 (citing *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. Dist. Ct. App. 2006) (investigating and then making false statements to state agency which lead to plaintiff's arrest was "not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society"), *review denied*, 949 So. 2d 200 (Fla. 2007); *Legrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. Dist. Ct. App. 2004) (clergyman falsely branded a thief in front of parishioners failed to state claim of IIED)). In the Court's view, the defendant's conduct in *Valdes* is arguably even more concerning than Defendant's here because it led to the plaintiff's arrest, yet the court still found it insufficient to state a claim. Because Plaintiff

has not alleged sufficiently outrageous conduct, her IIED claim is dismissed without prejudice.

Turning to NIED. The elements are: "(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995). "[T]he Florida Supreme Court held that psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist." *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1167 (M.D. Fla. 2023) (quoting *Brown v. Cadillac Motor Car Div.*, 468 So. 2d 903, 904 (Fla. 1985)).

Defendant argues that Plaintiff has failed "to allege a discernable physical injury." (Doc. 17 at 16). On that score, Plaintiff alleges that she "suffered physical manifestations from that emotional distress, including without limitation by almost physical collapse at Fawcett due to the workload, and stress and mental anguish resulting from the filing of the false and materially misleading Report and Complaint causing pre-existing physical conditions to exacerbate substantially, including resulting in surgery." (Doc. 14 ¶ 112).

13

Again, Plaintiff's allegations fall short. "Almost physical collapse" does not suffice. Nor do "stress and mental anguish." *See Gonzalez-Jiminez de Ruiz*, 378 F.3d at 1231 ("While the children claim they suffered *mental anguish* from the BOP's actions, they failed to establish any major adverse physical impact.") (emphasis added). Plaintiff cites no cases to support as much. Rather, she hangs her hat on unidentified pre-existing physical conditions which required an unspecified surgery. (Doc. 26 at 14). She cites *Zell* to support the proposition that "joint pain" is enough. (*Id.*). But she takes *Zell* completely out of context. In that case, the plaintiff witnessed her father's death at the hands of an anonymous bomber at her father's apartment. *See Zell*, 665 So. 2d at 1049. The plaintiff did not suffer significant physical injuries from the smoke or shattered glass that fell on her. But immediately after witnessing her father's death, the plaintiff began having insomnia, experiencing depression, short-term memory losses, extreme fear of loud noises, bad dreams, and an inability to stop reliving the event. She later began experiencing physical impairment in her upper stomach. The pain in her rib cage worsened. She became very ill, with pain spreading to her chest. She took ulcer medication but then experienced a blockage in her esophagus, could not swallow, and had difficulty breathing. She developed joint pain in her hips and elbows.

In short, *Zell* could hardly be more distinguishable from Plaintiff's ambiguous allegation of pre-existing physical conditions that resulted in surgery. What's more, Defendant cites numerous cases in its reply supporting the proposition that an exacerbated pre-existing condition fails to state a claim. (Doc. 32 at 4 (citing *Trocano v. Vivaldi*, 720 F. Supp. 3d 1231, 1242 (M.D. Fla. 2024); *Elliott v. Elliott*, 58 So. 3d 878, 882 (Fla. Dist. Ct. App. 2011) (a pre-existing condition that is exacerbated is insufficient) (collecting cases); *LeGrande*, 889 So. 2d at 995 (finding that memory loss and the exacerbation of a preexisting condition were insufficient); *Gonzalez–Jimenez de Ruiz,* 231 F. Supp. 2d at 1201–02 (concluding that aggravation of pre-existing conditions is insufficient to satisfy impact rule)). Accordingly, Plaintiff's claim of NIED is dismissed without prejudice.

Moving to Plaintiff's breach of contract claim (count I). The elements are a valid contract, a material breach, and damages. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Plaintiff alleges that by filing the report and complaint with DOH and taking other retaliatory actions, Defendant "breached the dependent, material terms of the NRP relating to Protected Activity and non-retaliation, which

survived her separation." (Doc. 14 ¶ 83). Defendant moves to dismiss the claim, arguing that it is not party to the contract, and even if it was, the NRP is not a contract. The Court agrees with both points.

First, the employment contract is between Aya and Plaintiff. (Doc. 35–38). Plaintiff does not address Defendant's contention that it is not party to the contract. *See Negreanu v. Starbucks Corp.*, No: 8:22-cv-2421-CEH-SPF, 2024 WL 810857, at *2 (M.D. Fla. Feb. 27, 2024) ("Generally, the failure to respond to the merits of a request for dismissal of a Plaintiff's claims would serve as a concession that the request is due to be granted."). The contract extends an offer to join the "Aya Healthcare Companies[], a healthcare staffing agency." (Doc. 14 at 35). The "Facility" where Plaintiff would work is "Fawcett Memorial Hospital," but Defendant is not a party to the contract. (*Id.*).

Nevertheless, Defendant's initial argument is somewhat beside the point. The true bone of contention is whether the NRP is a binding contract that Defendant could have allegedly breached. For these reasons, the Court finds that it is not.

Both Florida courts and federal courts interpreting Florida law have recognized that:

> [i]t is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit

16

> mutual agreement that the manual constitutes a separate employment contract.

*Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06CV175-ORL-31JGG, 2006 WL 1382111, at *8 (M.D. Fla. May 19, 2006) (quoting *Quaker Oats Co. v. Jewell*, 818 So.2d 574, 576–77 (Fla. Dist. Ct. App. 2002)). Plaintiff does not—and cannot—argue that the NRP contains language expressing the parties' mutual agreement that it is a separate employment contract. There is no such language in the NRP. Instead, she argues that the NRP does not contain any express language *disclaiming* that it is a contract. (Doc. 26 at 8). She cites no binding authority for support. And the only case that conceivably supports her argument is distinguishable.

In *Centennial Bank v. Servisfirst Bank Inc.*, the court denied a motion to dismiss a breach of contract claim, reasoning that certain ethics codes could be contracts. No. 8:16-CV-88-T-36JSS, 2017 WL 11632487, at *10 (M.D. Fla. Sept. 15, 2017). Like the NRP here, the ethics codes contained no disclaimer that they were contracts. *Id.*, at *10. But unlike the NRP, at least one of the ethics codes specified that compliance with its provisions was a condition of employment and that the obligations survive termination. *Id.* Further, the defendants in *Centennial Bank* signed forms acknowledging that they understood the provisions and agreed to comply with the ethics code. *Id.*

17

The NRP contains no provisions stating it is a condition of employment or that its obligations survive termination. (Doc. 14 at 39–41). It contains no signatures of Defendant's acknowledgement. Accordingly, it is distinguishable from *Centennial Bank*—which is merely persuasive authority. Under these circumstances, Plaintiff's breach of contract claim is dismissed with prejudice.

Finally, Plaintiff's whistleblower claim (count IV). "An employer may not take any retaliatory personnel action against an employee because the employee has: . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). Plaintiff alleges:

> While an employee of Fawcett, Plaintiff objected to and refused to participate in the activities, policies, or practices that Fawcett was utilizing for Fawcett's provision of healthcare services to patients, as well as the work environment Fawcett provided for nurses to render healthcare services to patients, which Plaintiff identified to Fawcett as being violative of the Nurse Practice Act, F.S. 464.001 *et seq.*, and the rules and regulations applicable to the Nursing Code of Ethics, which are "[l]aw[s], rule[s], or regulation[s]" as that term is defined in F.S. § 448.101(4).

(Doc. 14 ¶ 117).

To state a claim under the FWA, a plaintiff must allege that (1) plaintiff engaged in a protected activity, (2) plaintiff suffered a materially adverse employment action, and (3) the adverse action was causally connected to the protected activity. *Vuolo v. MHM Health Pros., LLC*, No. 22-12059, 2023 WL 2669827, at *2 (11th Cir. Mar. 29, 2023). To allege a violation of a law, rule,

or regulation under § 448.102(3), Plaintiff must plead facts to establish that: (1) there is a rule or regulation that prohibits the complained of conduct; (2) an actual violation occurred versus just a "good faith" hunch about a violation; and (3) the conduct is attributable to the employer. *Colon v. Total Renal Care, Inc.*, No. 8:07-CV-151-T26MAP, 2007 WL 4145940, at *2 (M.D. Fla. Nov. 19, 2007).

Defendant moves to dismiss Plaintiff's FWA claim, arguing that although she makes many general allegations regarding other nurses' conduct, she fails to allege a violation of any specific law, rule, or regulation. (Doc. 17 at 17 (citing Doc. 14 ¶ 118)). Specifically, Plaintiff does not identify what particular provision of the Nurse Practice Act Defendant allegedly violated, and her general reference to the whole statute is not enough to state a claim. (*Id.*).

In her response, Plaintiff dodges the issue. Instead, she references paragraph 117 of the FAC, which contains the general reference to the Nurse Practice Act Defendant highlights. (Doc. 26 at 15). She then argues that she also alleged Defendant's hospital is not a safe environment for patients. (*Id.* (citing Exhibit E)). Curiously, she then states that Defendant's failure to manage risk and its personnel subjects it to statutory violations—particularly Florida Statute § 766.110(a). (*Id.*) But Plaintiff pleads no violation of that section in the FAC, and there is no allegation she complained to Defendant of

19

any violation under this section. As the Court has already explained, Plaintiff cannot amend her pleading through her response. On this basis, her FWA claim is dismissed without prejudice.[5]

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 17) is **GRANTED**, as explained above.

2. If Plaintiff chooses to file an amended complaint, she must do so by **October 30, 2025**.

**DONE** and **ORDERED** in Fort Myers, Florida on October 16, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[5] Defendant raises additional arguments for dismissal of this claim. But the Court need not reach them at this time. Defendant is free to raise these arguments again in subsequent motion practice, if appropriate.